UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CASEY TRYON-CASTRO, ADAM VILLARREAL, TROY WEEKS, PATRICK BOURNES, and MICAIAH JOSEPH,<br><br>**Defendants.** | Case No.: 23 CR 35-5 (RC)<br><br>Honorable Rudolph Contreras |

**RESPONSE IN OPPOSITION TO DEFENDANT JOSEPH'S
SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendant Micaiah Joseph's Supplemental Motion to Suppress Evidence (Dkt. Entry 97). The Court should deny defendant's motion to suppress for the reasons set out in the government's original response. *See* Dkt. Entry 88. To the extent defendant raises new arguments for the suppression of evidence, those also fail, as set out below.

**ADDITIONAL FACTUAL BACKGROUND**

The government incorporates and adopts by reference the Statement of Relevant Facts in its initial response brief. Dkt. Entry 88. The government also sets out the following additional relevant facts relating to the execution of the search warrant at defendant's residence.

A warrant to search defendant's residence was issued in the United States District Court for the Eastern District of Virginia on January 13, 2023. The warrant was executed at defendant's residence on January 18, 2023, by special agents and members of the FBI's Special Weapons and Tactics (SWAT) team. *See* Exhibit A, FBI report of search at defendant's residence (redacted). At

1

approximately 6:00 a.m., SWAT team members arrived at the residence. *Id.* At approximately 6:02 a.m., the SFO Crisis Negotiation Team (CNT) tried to call Joseph on his cell phone to initiate his removal from the residence, but the call went to voicemail. *Id.* At approximately 6:04 a.m., WFO CNT called defendant's wife on her cell phone but that call also went to voicemail. *Id.* Shortly thereafter, defendant's wife exited the residence through the front door and was handcuffed by agents. *See* Exhibit B, body-worn camera footage at timestamp 00:45. As defendant's wife was handcuffed, the agents used a loudspeaker to call out, "MICAIAH JOSEPH IN [house number], COME TO THE FRONT DOOR NOW. THIS IS THE FBI." *Id.* at 00:55. Seconds later, agents repeated this call. *Id.* at timestamp 1:05. Approximately one minute later, agents repeated the call on the loudspeaker, demanding that defendant come to the front door. *Id.* at timestamp 1:55. SWAT team members then asked defendant's wife to identify where defendant was located in the home, which she did. *Id.* at timestamp 2:10.

At approximately 6:09 a.m., an agent knocked on the front door, announced FBI's presence and purpose, and demanded that any occupants come to the door. *See* Exhibit A; Exhibit C, body worn camera footage at timestamp 00:15. The agent repeated this call and then opened the unlocked storm door and continued to call into the residence demanding defendant come to the door. *Id.* at timestamp 00:30. Approximately 70 seconds after his initial knock on the door, the agent then saw the defendant inside the house and ordered him to come out. *Id.* at timestamp 1:30. Defendant then came out of the house and was handcuffed by agents, approximately five minutes after agents initially called for defendant to exit the residence. *Id.* at timestamp 2:15.

Agents then made entry into the home and utilized a drone to ascertain whether any other individuals were present. *See* Exhibit C at timestamp 2:50. The drone did not record any footage. During the search of the residence, the agents located defendant's cellular phone in his bedroom

2

on the floor beside the bed. *See* Exhibit D, evidence log (redacted). Defendant's wife (whose handcuffs had been removed at this point) entered the passcode into the phone and unlocked the phone for agents. *See* Exhibit E, FBI report regarding unlocking of phone (redacted). Agents then asked defendant's wife to provide the password to the cell phone. *Id.* Joseph's wife asked if she had to provide the password and was told that she was under no legal obligation to provide the password, however if she did not provide it, it could take a long time to get into the cellphone by other means. *Id.* She was also informed that the cellphone would not be able to be returned until the phone was unlocked and imaged. *Id.* Defendant's wife then provided the FBI with the passcode for the phone. *Id.*

## ARGUMENT

Defendant Joseph's Supplemental Motion to Suppress Evidence asserts several half-formed arguments, none of which requires the suppression of defendant Joseph's cellular phone.

**I.   The FBI did not coerce defendant's wife into providing defendant's phone passcode.**

Defendant Joseph now argues that his wife's provision of his cell phone passcode was "coerced" and therefore, the phone contents should be suppressed. The voluntariness of consent to search depends on "the totality of all the circumstances" including the consenting party's age, education level, lack of advice concerning his or her constitutional rights, the length of detention, nature of the questioning and use of physical punishment. *See United States v. Wilson*, 605 F.3d 985, 1027 (D.C. Cir. 2010).

Defendant offers no evidence of the alleged coercion of his wife other than a still image of defendant's wife from body-worn camera footage that simply shows her standing in the street with her hands up. Nor does defendant specify *how* FBI supposedly "coerced" his wife. Instead, he merely concludes – without a sworn affidavit from his wife – that she was "scared out of her mind

at the time." Dkt. Entry 97 at 3. However, the body-worn camera footage (Exhibits B and C) clearly show that defendant's wife was calm and, that she understood what was happening. In fact, according to FBI's report,[1] his wife explicitly asked the agent if she had to provide the passcode. When the agents told her that she didn't have to provide the passcode and explained the logical consequences of that choice (that it could take longer for FBI to review the phone, such that Joseph might not be able to get it back as quickly), she then voluntarily chose to provide it to the agent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (noting that "knowledge of the right to refuse consent is one factor to be taken into account" when considering whether consent was voluntary).

In summary, Joseph's wife was not detained at the time she provided the passcode – she was in her own home and no longer handcuffed – she was not subject to interrogation, and she was explicitly advised that she did not have to provide the passcode. Defendant has not put forward any evidence that his wife suffered from any disability or was otherwise unable to provide this information due to her age or education level. This is not coercion. *See, e.g., United States v. Welch,* 683 F.3d 1304, 1309 (11th Cir. 2012), *abrogated on other grounds as recognized by Baxter v. United States,* 708 Fed. App'x 572 (11th Cir. 2017) (finding that officers did not coerce consent when they told defendant they would have to get a search warrant if he did not consent to search, which might "take a while," and noting, "it would be a delicate will indeed that might be overborne by the threat of a period of idleness and wasted time"); *United States v. Roberson*, 573 F. Supp. 3d 209, 232 (D.D.C. 2021) (finding that consent to search was voluntary when, among other things,

---

[1] The SWAT team members were equipped with body-worn camera. The case team agents were not. Therefore, the conversation between Joseph's wife and case team agents about the passcode to Joseph's phone was not captured on body-worn camera but instead memorialized in a written report.

agent explicitly told defendant he did not have to sign consent form); *United States v. Miller*, No. 17-CR-195 (TSC), 2018 WL 10373742, at *3 (D.D.C. Feb. 23, 2018) (holding that defendant was not coerced into waiving her Fifth Amendment rights when evidence indicated that law enforcement did not act in a coercive or threatening manner).

In the absence of actual or implied coercion, evidence from defendant's phone should not be suppressed. Furthermore, as set out below, even if defendant's wife was coerced, the data from the phone would have inevitably been obtained by the FBI – either through the use of biometric characteristics or through the FBI's forensic imaging tools – and therefore, the phone data should not be suppressed.

**II.     The FBI was not required to obtain Joseph's biometric characteristics.**

In his supplemental motion, the defendant appears to argue that the search warrant's allowance for agents to obtain biometric characteristics from Joseph somehow makes Joseph's wife's provision of the passcode to his phone involuntary and compulsory. However, authorization to obtain biometric characteristics in a warrant does not compel the executing agents to do so. The executing agents can always obtain the passcode through other lawful means, such as obtaining it through consent of a defendant or spouse. And the choice not to obtain biometric characteristics does not make agents' requests for the passcode coercive. Defendant cites absolutely no authority to the contrary.

If anything, the authorization in the warrant to obtain biometric characteristics shows that the information in the phone would have inevitably been obtained by the FBI, regardless of whether or not defendant's wife was coerced into giving it to agents. *See Nix v. Williams*, 467 U.S. 431, 444 (holding that evidence initially detected as the result of unlawful government conduct can be introduced "if the prosecution can establish by a preponderance of the evidence that the

information ultimately or inevitably would have been discovered by lawful means."). Thus, the phone data is admissible under the inevitable discovery doctrine.

    **III.**    **The FBI did not have to obtain a separate warrant for the phone.**

The defendant summarily argues that the FBI's failure to obtain a separate warrant specific to defendant's cellular phone was "a violation under *Riley*."[2] Dkt. Entry 97 at 3. Defendant fails to identify *how* a warrant that specifically permits agents to search for and seize "any digital device which is capable of containing and reasonably could contain evidence, information, or instrumentalities…" is deficient, much less a Fourth Amendment violation under *Riley v. California*, 134 S.Ct. 2473. In *Riley*, the Supreme Court held that the search incident to arrest doctrine does not extend to cellular phones. *Id.* But that is not the case here. Defendant's phone was seized from inside defendant's residence pursuant to a warrant; a warrant that clearly included "any digital device" within its scope. Thus, *Riley* is not applicable, and the search of the phone was lawful.

Even if the FBI was required to obtain a separate warrant for the phone (it was not), the "good faith" exception forecloses suppression here. The magistrate judge signed a warrant that included the seizure of digital devices. Law enforcement was entitled to rely on that determination. *See United States v. Leon*, 468 U.S. 897, 913, 920-22 (1984).

    **IV.**    **The FBI's use of a drone to assist in execution of the search warrant does not constitute a Fourth Amendment violation.**

Defendant also appears to argue that FBI's use of a drone during execution of the search warrant is also a basis to suppress the phone evidence, though, once again, he fails to explain how. Agents had a warrant allowing agents to enter and search the residence for evidence. The drone

---

[2] The government presumes defendant to be referring to *Riley v. California*, 134 S.Ct. 2473 (2014).

was used to observe the residence in the same way that an agent would observe the residence – i.e. its use did not exceed the scope of the warrant in any way. Instead, it was employed by SWAT for agent safety. Under these circumstances, the use of the drone did not violate Joseph's Fourth Amendment rights.

### V.     An evidentiary hearing is not needed to decide defendant's motion.

An evidentiary hearing is not warranted here. For more than 50 years, the law in this Circuit has been that "[a] defendant is entitled to an evidentiary hearing on his motion to suppress 'only upon factual allegations which, if established, would warrant relief.'" *United States v. Thornton*, 454 F.2d 957, 967 n. 65 (D.C. Cir. 1971), quoted in *United States v. Law*, 528 F.3d 888, 903–04 (D.C. Cir. 2008) (emphasis added). There is no dispute as to material facts such that live testimony is required in this case.  In fact, defendant has failed to put forth any plausible basis for suppression of the phone data. Under these circumstances, a hearing is not needed and will waste the time and resources of the parties and the Court.

## CONCLUSION

For all of the foregoing reasons, the defendant's motions to suppress (Dkt. Entries 78 and 97) should be denied.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar No. 481052

By:    */s/ Kaitlin Klamann*
        KAITLIN KLAMANN
        Assistant United States Attorney
        601 D Street NW
        Washington, D.C. 20530
        IL Bar No. 6316768
        (202) 252-6778
        Kaitlin.klamann@usdoj.gov

        HOLLY GROSSHANS
        Assistant United States Attorney
        601 D Street NW
        Washington, D.C. 20530
        DC Bar No. 90000361
        (202) 252-6737
        Holly.Grosshans@usdoj.gov