IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 23-CR-35-5 (RC) |
| | : | |
| | : | HEARING REQUESTED |
| MICAIAH JOSEPH | : | |

DEFENDANT'S SECOND SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE

1. **Background**

On March 24, 2023, Mr. Joseph filed his initial motion to suppress evidence. Subsequent to that filing, the government disclosed a great deal of additional discovery. Undersigned counsel moved to supplement the motion, that request was granted by the Court on July 10, 2023 and a supplement was filed by defendant. *See* ECF No. 96 . At the September status conference, this Court asked undersigned counsel to brief the *Leon* issue more fully. This supplement is that additional briefing, and then some.

2. **The search warrant**

The search warrant states that "…law enforcement personnel are also specifically authorized to obtain from Micaiah Joseph…the compelled display of any physical biometric characteristics…necessary to unlock any Device(s) requiring such biometric access subject to seizure pursuant to this warrant…" *See Search Warrant for premises,* at 9.[1] Importantly, the warrant specifically excludes getting that information from any person other than Mr. Joseph. The warrant stated in part "…law enforcement personnel are also specifically authorized to

---

[1] As mentioned in the prior motion to suppress, the Court should have a thumb drive and/or upload to a folder for the court with these documents. Undersigned counsel filed the warrant, application and affidavit under seal.

1

obtain from Micaiah Joseph (**but not any other individuals present at the PREMISES at the time of execution of the warrant**) the compelled display of any physical biometric characteristics….″ (emphasis added) *Id. See also*, previous motions to suppress, ECF Nos. 78 & 96.

   3. <u>The law</u>

The Supreme Court held in *United States v. Leon,* 468 U.S. 897 (1984) that evidence seized pursuant to a search warrant subsequently determined to be invalid is not subject to exclusion from the government's case-in-chief if the officers who executed the warrant acted in objectively reasonable reliance on the issuing magistrate's finding of probable cause. *Id*. at 922. The Court reasoned that where the officers have acted in an objectively reasonable manner, exclusion of the evidence does not deter unlawful police conduct and any legitimate benefit of the exclusionary rule's application is outweighed by the substantial cost to society of suppressing reliable evidence. *Id*. at 915-22. The Supreme Court stressed in *Leon* that the newly-created exception to the exclusionary rule is based on an "objective" standard of reasonableness. *Id*. at 919 n.20. Essential to the objective nature of the inquiry is the expectation that law enforcement officers "have a reasonable knowledge of what the law prohibits." *Id*. ( *citing United States v. Peltier*, 422 U.S. 531, 542 (1975). Because good-faith mistakes cannot be deterred, the exclusionary rule applies only if "the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Davis v. United States*, 564 U.S. 229, 238 (2011). In addition to probable cause, the Fourth Amendment limits searches by law enforcement to "the specific areas and things for which there is probable cause to search," and requires that a search "be carefully tailored to its justifications" and "not take on the character of the wide-ranging

exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (footnote omitted).

As previously noted by the defense, the affidavit thus "must demonstrate cause to believe" not only that an item of evidence "is likely to be found at the place to be searched," but also that there is "a nexus between the item to be seized and [the] criminal behavior" under investigation. *United States v.Griffith,* 867 F.3d 1265, 1271 (D.C. Cir. 2017) (*quoting Groh v. Ramirez*, 540 U.S. 551, 568 (2004). Because the affiant (nor any other officer) never saw the defendant with a phone, there is no nexus to the house or his activities of January 6.

4. **Argument**

First, the warrant was lacking in probable cause. There was no evidence that Mr. Joseph had a phone on January 6, 2021 at the Capitol. Moreover, the warrant wasn't specifically particular on its face.  The affidavit only said that perhaps Mr. Joseph "may have" a phone. *See* Affidavit, paragraph 51. The search of his electronic devices was without probable cause to believe that evidence of Mr. Joseph's actions on January 6, 2021 would be found on any particular one of the electronic devices authorized to be searched.  The agents had no evidence there would be a phone on the premises that belonged to Mr. Joseph, or if he had one, what kind it was.[2]  As agents streamed into the home during the search, not one could point to any nexus of the supposed electronic device  and Mr. Joseph's activities of January 6, 2021. There is no evidence that the affiant knew Mr. Joseph owned a phone and that he had used the phone to commit any of the offenses he was charged with. There is no description, for example, by the affiant of how Mr. Joseph allegedly used his phone to commit the crime. "the affidavit failed to

---

[2] This is something agents could have easily determined and taken photos of by simply sitting on the house and doing surveillance of Mr. Joseph.

establish probable cause to believe that any cell phone (or other electronic device) containing incriminating information about [the defendant's] suspected offense would be found in the apartment."*Griffith* at 1279 (emphasis in original); *see also id*. at 1278 ("[T]he affidavit sought, and the warrant granted, authorization to search for and seize every electronic device found in the home. The warrant's material overbreadth in that regard underscored the police's unawareness of the existence of any such devices in the first place (much less the existence of any belonging to Griffith) ....").

The officers did not act in an objectively reasonable manner because they didn't act in good faith in the execution of the warrant. The whole purpose of *Leon* is to keep police officers honest. Excluding otherwise reliable evidence hurts the prosecution of the case.   Here, the warrant authorizes agents to compel Mr. Joseph, no one else, to provide biometric display. The warrant specifically states agents can ask Mr. Joseph for the password (for the phone) or identify the specific biometric characteristics to his phone but cannot compel him to provide this information.  The only thing they are authorized to compel are to obtain his fingerprint, thumbprint, facial characteristics, or iris display necessary to unlock the phone. *See* warrant. What is truly outrageous is that officers did not even attempt to obtain his biometric display characteristics to unlock his own phone.  Nor did they even ask him to open it for them or for the passcode to open it themselves, even though Mr. Joseph was right there with them.  In essence, they had Mr. Jospeh right there and could have easily asked him for consent to search his own device and they deliberately bypassed that lawful means.

Instead, the agent demanded Mr. Joseph's traumatized wife open the locked phone they knew to be Mr. Jospeh's as she walked down the stairs holding her infant son in her arms.  Mr. Joseph was in the other room as she passed by.  (See figure 1 below, screenshot from body worn

4

camera where Mr. Joseph is seated and circled in red and Mrs. Joseph and son are circled walking down stairs followed by SWAT team members with guns).  It is moments later she is told to unlock her husband's phone.



*Figure 1*

      The agent handed her a phone and told her to open it up.  It was her husband's phone, not hers. The same agent then demanded that she provide the passcode that she just entered.  Mrs. Jospeh began to give the numbers one by one to the agent (who was heavily armed) and only as she reached the last two numbers did it occur to her that perhaps she had the right to refuse this demand.  She then asked the agent if she had to give the passcode and he informed her that she didn't have to do it, but that her husband might not get his phone back for a very long time if she didn't.  She felt she had no choice.  By doing this, the agent was holding her husband's phone hostage in order to compel the remaining two numbers from her.   Mrs. Jospeh was surrounded by swat team members flashing large assault weapons during this time, was worried about feeding her infant son, and was in "shock" from the morning's events.  She even told the same SWAT officer who walked her down the stairs that she was in shock and disbelief and couldn't

5

understand why 50 officers in combat gear swarmed her house that morning.  Earlier that morning her infant son woke up to banging on his door and SWAT team members in full combat gear pointing assault rifles at his crib.  (See figure 2 below).  It took several minutes for SWAT team members to clear the way for Mrs. Jospeh to go get her child.  To say Mrs. Jospeh was in shock and traumatized by these events is an understatement.



Figure 2

But the real outrage in this matter is that after undersigned counsel filed her motion to suppress for Mr. Joseph on March 24, 2023, (ECF No. 78) FBI special agent Matthew J. Drummond thereafter wrote an FBI 302 dated April 10, 2023, detailing his alleged interaction with Mrs. Joseph.  In that 302, agent Drummond admits he requested she unlock the phone he knew to be Mr. Jospeh's and that he requested the passcode.  A hearing is necessary to develop the facts about his "request" and the circumstances surrounding his demand for Mrs. Jospeh to comply with orders to unlock a phone.  Additionally, the agent knew the phone did not belong to her and he had no good faith indication whatsoever that the phone was shared property with her

husband.  His failure to first seek a biometric opening or consent from the owner of the phone, as he was authorized to do, indicates his willingness and desire to skirt past the requirements of the warrant.  In particular, the warrant states he was not authorized to ask others at the premises for such information.  The defense has not been given any notes in discovery that pertain to this 302 and would ask the Court now to order those notes to be preserved. *See* Motion to preserve rough notes, ECF No. 76.

There is no way the agents had good faith in asking Mrs. Joseph to open the phone because based on the warrant and the affidavit, they could only ask Mr. Joseph for the consent to search his property.    The agent knew what he was allowed to do, only ask Mr. Joseph,  but he specifically ignored the only authorization he had. He told the Court what he was going to do, he got a warrant signed by the Magistrate Judge telling him what he would do, and he did the opposite. He compelled a third person with no custody or control of Mr. Joseph's phone to give the password. Had Mr. Joseph not been in the home at the time, the argument here would be no different. There was no nexus, and no apparent authority for Mrs. Joseph to provide the password to the phone.

The exclusionary rule is only effective if it is enforced by Courts when it's clear that law enforcement officers ignored the rule of law. This application of the good-faith exception to the exclusionary rule reflects the policies behind the suppression remedy, which "was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984) (quoting *Gates*, 462 U.S. at 263 (White, J., concurring in judgment)).

Even if the Court finds no *Leon* exception applies here, the alleged consent given by Mrs. Joseph is not valid. Because Mr. Joseph was home at the time, and agents had ample opportunity to ask his consent to unlock the phone but didn't. They ignored the direction of the Magistrate Judge in the warrant. Thus, whatever consent Mrs. Joseph gave the agents is invalid and anything after that must be suppressed. *Cf. Georgia v. Randolph,* 547 U.S. 103 (2006)( a physically present co-occupant's stated refusal to permit entry renders warrantless entry and search unreasonable and invalid as to him. Pp. 109-123.) *See also* Illinois v. Rodriguez, 497 U. S. 177, 186 (1990).

Moreover, R=requiring Mr. Joseph to give his numeric passcode and/or biometric passcode to police is a violation of his 5th amendment right to remain silent. Any statement from Mr. Joseph in this regard would be considered testimonial. Officers can seize a cell phone if they believe there is evidence of a crime on it, but cannot search it without a warrant. See Riley v. California, 573 U.S. 373, 401-03 (2014). It is fundamental that the government bears the burden to produce evidence against an accused rather than compelling the individual to provide it. *Miranda v. Arizona*, 384 U.S. 436, 460 (1966).

Disclosing a cell phone passcode is like revealing "the combination to [a] wall safe"— not like being "forced to surrender a key to a strongbox." Handing over a key has clear physical characteristics, and as such has been found by the Court to be afforded less protection. Physically handing over a key does not compel a defendant to disclose the contents of her mind. However, verbal disclosure of a cell phone passcode is the purest form of testimony and is akin to providing the combination to a wall safe. Therefore, because the disclosure of a cell phone passcode is testimonial, incriminating, and compelled, it is entitled to full protection under the Fifth Amendment. *See Doe v. United States*, 487 U.S. 201, 219 (1988) (Stevens, J., dissenting).

Respectfully submitted,

/s/ *Kira Anne West*
Kira Anne West
DC Bar No. 993523
712 H. Street N.E., Unit 509
Washington, D.C.  20002
(202)-236-2042
kiraannewest@gmail.com
Attorney for Mr. Joseph

Certificate of Service

I certify that a copy of the forgoing was filed electronically for all parties of record on this 26th day of January, 2024.

/s/   Kira A. West
Kira Anne West